UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Redi Fresh Produce, Inc., )
)
)
*Plaintiff*, )
v. ) Case No.
)
Global Tropical Fresh Fruit, Corp., )
and Harvey Ehrlich, )
)
*Defendants*.

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND A PRELIMINARY INJUNCTION

Paul T. Gentile P.C.
Attorney for Plaintiff
260 Madison Avenue, 15th Floor
New York, NY 10016
(212) 619-2700

## I. INTRODUCTION

Plaintiff, Redi Fresh Produce, Inc. ("Redi Fresh"), respectfully requests that this Court issue a Temporary Restraining Order Without Notice and Preliminary Injunction requiring the defendants, Global Tropical Fresh Fruit Corp. ("Global") and Harvey Ehrlich ("Ehrlich") to preserve and maintain and prevent any further dissipation of trust assets, all in favor of plaintiff, a qualified and unpaid trust beneficiary under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e (c), as amended, and the regulations issued pursuant thereto, 7 C.F.R. Part 46, 49 Fed. Reg. 45725 (Nov. 20, 1984) (the "PACA" Regulations").

## II. FACTS

Redi Fresh, an unpaid supplier of perishable agricultural commodities in interstate and foreign commerce, seeks declaratory relief, a judgment, and enforcement of the statutory trust set forth in the PACA. In addition, plaintiff requests entry of an Order to preserve the trust *res* from further dissipation by the defendants.

Plaintiff is a licensed PACA merchant (License No.: 20011411) engaged in the sale of perishable agricultural commodities to merchants and dealers. Global is also a licensed PACA merchant (License # 20071119) and is subject to the PACA and the PACA Regulations. Between August 13, 2013 and September 24, 2013, Redi Fresh sold and shipped to defendants in interstate commerce, perishable agricultural commodities on account from plaintiff in the amount of $349,920.00. Pursuant to the plaintiff's invoices, payment was due within thirty (30) days of receipt of the invoice. Redi Fresh reserved its rights to the statutory trust by providing invoices to Global in the ordinary course of business containing the required statutory language authorized by the

1

November 15, 1995 amendment to the PACA, in that the invoices stated that produce sold was subject to the statutory trust provisions of Section 5(c) of the PACA, 7 U.S.C. § 499e(c)(4). See Declaration of Peter Malo at ¶ 14, 20.

Defendant Ehrlich is well aware of plaintiff's status as a trust beneficiary. As a PACA trust beneficiary, plaintiff has a super priority over any other creditors of the defendants, except for other PACA creditors, and, in the event that there are other PACA trust beneficiaries, they are entitled to a *pro rata* share of the PACA trust assets.

Despite repeated demands, defendant Global has not paid Redi Fresh for the produce that was sold to and accepted by it as set forth in the complaint. Defendants have made agreement to sell its operating units in the Brooklyn Terminal Market, all of which are PACA Trust Assets, *i.e.* acquired through the proceeds of the sale of perishable produce. Absent restraints, these PACA Trust assets will be sold without protection to the plaintiff for its unpaid and valid PACA Trust claim.

Plaintiff requests the entry of a Temporary Restraining Order Without Notice and then a Preliminary Injunction for the purpose of preventing Global from taking any action to dispose of or otherwise disburse the property and assets which are subject to the statutory trust created by the PACA, including those monies and/or property received from or resulting from the impending sale of the Global units. The failure of Global to pay promptly for commodities bought from plaintiff causes substantial damage to the business of plaintiff, and endangers the ability of plaintiff to pay its suppliers. Further, once Global and the individual defendant Ehrlich disburse funds received, it will be extremely difficult, if not impossible, to force the third parties to disgorge the funds, should this Court determine that said funds were wrongfully paid to third parties in violation of the PACA. Under

these circumstances the entry of a Temporary Restraining Order Without Notice and then a Preliminary Injunction are entirely appropriate.

### III. LAW AND ARGUMENT

A.   The Perishable Agricultural Commodities Act

The Perishable Agricultural Commodities Act of 1930, 7 U.S.C. §499a, *et seq.* ("PACA") was adopted as a Depression-era regulation of the produce industry. "PACA is an intentionally rigorous law whose primary purpose is to exercise control over an industry which is highly competitive, and in which the opportunities for sharp practices, irresponsible conduct and unfair methods are numerous". *Wayne Cusimano. Inc. v. Block*, 692 F.2d 1025, 1028 n.2 (5th Cir. 1982) (*quoting* 1956 U.S. Code Cong. & Admin.. News 3699, 3701). "The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility." *Finer Foods Sales Co. v. Block*, 708 F.2d 774, 782 (D.C. Cir. 1988).

The statute is intended to remedy the "domino effect" caused by the failure to pay for fresh produce. "Failure to pay" violations not only adversely affect the party who is not paid for produce, but such violations have a tendency to snowball. "On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee. This could have serious repercussions to procurers, licensees and consumers." *In re Columbus Fruit Co.*, 40 Agric Dec. 109, 114 (1981), *aff'd. mem.*, 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982).

The PACA was amended in 1984 to add a provision for a statutory trust for the benefit of unpaid suppliers of fresh produce. Section 5 of the PACA, 7 U.S.C. § 499e, creates a statutory trust for the benefit of unpaid sellers or suppliers of perishable agricultural commodities, the *corpus* of

which consists of the perishable agricultural commodities received, all inventories of produce or other products derived from the perishable agricultural commodities received, any receivables or proceeds from the sale of such commodities or products, and any non-produce related assets purchased with trust monies. See *In re Atlantic Tropical Market*, 118 Bankr. 139 (Bankr. S.D. Fla, 1990). In this regard, Section 5(c), 7 U.S.C. § 499e(c), provides, in relevant part;

> (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, <u>until full payment</u> of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents (emphasis added).

As a company engaged in the buying of wholesale quantities of perishable agricultural commodities, Redi Fresh is a "dealer" under the provisions of the PACA and the applicable regulations promulgated by the Secretary of Agriculture. 7 U.S.C. § 499a(6); 7 C.F.R. § 46.2(m)(1). The produce supplied by plaintiff to defendant Global was acquired in interstate and/or foreign commerce and falls within the statutory definition of a "perishable agricultural commodity." 7 U.S.C. § 499a(4)(A). Therefore, the transactions between the plaintiff and Global which are relevant for the purposes of this Application, are governed by the trust fund provisions of the PACA.

Pursuant to the terms of the statute, the inventory of perishable agricultural commodities held by Global and the proceeds derived from the sale thereof are impressed with a statutory trust, and have been so subject to the statutory trust since delivery of the perishable agricultural commodities. Under the regulations, the entitlement of the creditors to participate in that statutory trust created by

the PACA was automatic upon the transfer of the perishable agricultural commodities to Global, 7 C.F.R. § 46.46(d)(l).

Redi Fresh reserved its rights to the statutory trust by providing invoices to Global in the ordinary course of business containing the required statutory language authorized by the November 15, 1995 amendment to the PACA, in that the invoices stated that produce sold was subject to the statutory trust provisions of Section 5(c) of the PACA, 7 U.S.C. § 499e(c). The statutory trust is a nonsegregated "floating" trust pursuant to which the commingling of trust assets is contemplated, and all trust assets whether or not commingled are part of the trust *corpus*. Accordingly, it is not necessary for creditors to trace specific trust assets. *In re Fresh Approach, Inc.*, 51 Bankr. 412 (Bankr. N.D. Tex. 1985).

Most of the reported decisions interpreting the statutory trust provisions of the PACA have been in the context of bankruptcy proceedings, where the opposing interest (generally the Trustee in Bankruptcy or Debtor in Possession) holds the most privileged hypothetical lien status and can assert the numerous Bankruptcy Code provisions which invalidate the claimed superior status of any creditor. However, even in these instances, the courts have recognized the valid and effective trust beneficiary status of a PACA trust beneficiary, and its entitlement to immediate possession of the trust *corpus*. *See*, e.g, *Endicott Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995); *In re Fresh Approach, Inc.*, 48 Bankr. 926 (Bankr. W.D. Tex. 1985); *In re Prange Foods Corp.*, 63 Bankr. 211 (Bankr. W.D. Mich. 1986); *In re Anthony Tammaro, Inc.*, 56 Bankr. 999 (D. N.J. 1986).

In amending the PACA to add the statutory trust provisions, Congress specifically stated its intention to create a statutory trust similar to that then in existence for the benefit of livestock dealers

under the Packers and Stockyard Act of 1921, 7 U.S.C. § 196. *See* H.R. Rep. No. 98-543, 98th Cong., 1st Sess., 4 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad. News 405, 407. The legislative history accompanying the 1984 PACA amendments supports the position of the debtor. The House Report accompanying the legislation states:

> This legislation would provide a remedy by impressing a trust in favor of the unpaid seller or supplier on the inventories of commodities and products derived therefrom and on the proceeds of sale of such commodities and products in the hands of the commission merchant, dealer or broker in the same manner as has been provided by "trust" amendments to the Packers and Stockyards Act adopted in 1976... The trust impressed by section 5(c)(2) of this Act <u>is made up of a firm's commodity related liquid assets, and is a nonsegregated "floating" trust, which permits the commingling of trust assets</u>...

\*\*\*

> The trust impressed by section 5(c)(2) is a nonsegregated "floating trust" <u>made up of all a firm's commodity related liquid assets</u>, under which there may be a commingling of trust assets. Under this provision there is no necessity to specifically identify all of the trust assets through each step of the accrual and disposal process. (emphasis added).

1984 U.S. Code Cong. & Admin. New. 407, 409. The view that the trust consists of <u>all</u> produce-related assets, not just those traceable to the PACA claimants, is further supported by the remarks of the Representative introducing the 1984 trust amendments:

> H.R. 3867 impresses a statutory trust on <u>all perishable agricultural commodities</u> received by a buyer and <u>all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities</u> for the benefit of the unpaid seller. (emphasis added).

129 Cong. Rec. H9902 (daily ed. November 15, 1983) (statement of Rep. de la Garza). Testimony at the congressional hearings on the 1984 trust amendments provides additional evidence that Congress

intended the trust to consist of <u>all</u> produce-related assets:

> To protect sellers until full payment is received, this legislation would give sellers a new safeguard by allowing them, under specified conditions, and subject to action by the sellers, to be treated as beneficiaries of a nonsegregated trust <u>consisting of all of the buyer's commodity-related liquid assets</u>. (emphasis added).

Amendments to the Perishable Agricultural Commodities Act: Hearings on H.R. 3867 Before the Subcomm. on Domestic Marketing, Consumer Relations and Nutrition of the House Committee on Agriculture, 98th Congress, 1st Session at 2 (1983) (hereinafter cited as "Hearing Transcript") at 2 (statement of Rep. Pinetta).

> As a seller is paid for his goods, the trust would be diminished by that amount. <u>As new purchases are made and goods come in, they are added as trust assets. That is why we call it a floating trust. It varies up and down, and no specific identity of all trust assets is available.</u> (emphasis added).

Testimony of John Gardner, Chief, PACA Branch, Agricultural Marketing Service, Hearing Transcript at 19. The official statement of the Department of Agriculture at the same hearings also concludes that the trust consists of all commingled commodity-related assets:

> The trust impressed by §5(c)2 is a so-called "floating trust". As each supplier, seller or agent gives ownership, possession, or control of perishable agricultural commodities to a commission merchant, dealer or broker, each supplier, seller or agent will automatically become a participant in the trust. Trust participants who file to preserve their right to benefits remain trust beneficiaries until they have received payment in full. When produce shipments are paid for or trust assets are liquidated, the amount of the trust will be reduced. <u>Likewise, the receipt of new shipments adds to trust assets.</u> Trust assets may be commingled with other assets of the receiving business, and may be traced into the resulting constructive trust this concept is tailored after that which was upheld in the case of *In re Gotham Provision Co., Inc., The First State Bank of Miami v. Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir. 1982). The purpose of the trust is to assure that all business entities along the

> chain of supply from the producer receive prompt payment for their goods and assurance that they will not be deprived of being paid by the receiver because liens have been placed on the goods or receivables for the benefit of other creditors. (emphasis added).

Hearing Transcript at 66 (statement of Vern F. Highley, Administrator, Agricultural Marketing Service, U.S. Department of Agriculture).

Specifically, Section 499e(2) of PACA provides that

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities… until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

This provision imposes a "non-segregated floating trust" (hereinafter the "PACA Trust") on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust. 7 C.F.R. §46.46(c). A single non-segregated PACA Trust exists for the benefit of all PACA creditors and continues in effect until all PACA creditors are paid in full. *In re Kornblum & Co.*, 81 F.3d 280, 286 (2d Cir. 1996).

Ordinary principles of trust law apply to the trusts created by the Act, see *Endico Potatoes v. CIT Group/Factoring, Inc.*, 67 F. 3d 1063, 1067 (2nd Cir. 1995), so that a dealer holds the legal title to the produce and its derivatives or proceeds but the seller retains an equitable interest in the trust property pending payment. *See* Restatement (Second) of Trusts §2 (1959). Accordingly, in the event of the dealer's bankruptcy, the Bankruptcy Code excludes PACA Trust assets from the bankruptcy estate. See *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

Through this PACA Trust, the sellers of the commodities maintain a right to recover against

the purchasers superior to all creditors, including secured creditors. *See, e.g.*, 7 U.S.C. §499e(c)(1); *Tom Lange Co. v. Lombardo Fruit & Produce Co.*, 12 F.3d 806, 809 (8th Cir. 1993); *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1993).

Two categories of assets can be subject to a PACA Trust: (1) perishable agricultural commodities and inventories of food or other products derived from the sale of perishable agricultural commodities; (2) proceeds from the sale of such commodities, including accounts receivable. 7 U.S.C. §499e(c)(2), see, e.g., *In re Melon Produce, Inc.*, 162 B.R. 386 (Bankr. D. Mass. 1994), and (3) assets purchased with proceeds of PACA Trust assets, such as equipment or real estate, *e.g.* Global's stalls in the Brooklyn Terminal Market. *In re Kornblum & Co., supra.*

The burden of proving whether disputed assets were acquired from the sale of perishable agricultural commodities, and thus potentially subject to a PACA Trust claim lies with the defendant to the claim. *Sanzone-Palmisano Co. v. M. Seaman Enterprises*, 986 F 2d 1010, 1014 (6th Cir. 1993). As a result, all the assets of Global (i.e. inventory, accounts receivable, furniture, fixtures, equipment, vehicles and the like) are presumed to be PACA Trust assets unless and until the defendants affirmatively establish otherwise.

Although the PACA Trust rights arise at the time of each sale, in order to preserve its claim as a beneficiary of a PACA Trust, a PACA creditor must comply with the notice requirements of PACA. The plaintiff did so by including the requisite statement on its ordinary and usual billing documents, 7 U.S.C. §499e(c)(4).

B. **Plaintiff is Entitled to Injunctive Relief**

The Eleventh Circuit Court of Appeals has held that, under 7 U.S.C. §499e(c)(4), district courts have the authority to issue the type of injunctive relief sought by plaintiff. See, *Frio Ice. S.A.*,

*v. Sunfruit Inc.*, 918 F.2d 154, 157-158 (11th Cir. 1990). Because the legislative history of the PACA neither directly nor inferentially restricts the district courts' jurisdiction to entertain injunctive suits by trust beneficiaries, those courts may exercise fully their traditional equity powers and issue injunctive relief to PACA trust beneficiaries. *Frio Ice* at 157-158.

Further, the *Frio Ice* Court found that §499e(c) authorizes district courts to order PACA defendants, such as Global, to create segregated trust accounts to enforce payments to trust beneficiaries:

> [T]he central purpose of §499e(c) is to ensure payment to trust beneficiaries. Segregation often may be the only means by which a federal court can prevent dissipation. H. Rep. No. 543, 98th Cong., 2d Sess. 4, reprinted in 1984 U.S. Code Cong. & Admin. news 405,407. The legislative history noted that <u>once the trust is dissipated it is almost impossible for a beneficiary to obtain recovery</u>. Id. at 411. congress recognized that dissipation of trust assets would undermine PACA and made such dissipation a violation of the statute. 7 U.S.C.A. §499b(4) (West Supp. 1990). Thus, preventing dissipation of the trust is a key purpose of PACA. <u>Segregation of trust assets is an important tool for achieving that purpose</u>. For these reasons, the district court's finding that it did not have the authority to segregate trust assets is erroneous. *Frio Ice., supra*, at 159 (emphasis added).

In the event that trust assets are insufficient to pay the claims of all PACA trust creditors in full, qualified PACA trust creditors are entitled to a *pro-rata* distribution of the trust fund. *In re Milton Poulos, Inc.*, 107 Bankr. 715 (9th Cir. B.A.P. 1989); *J.R. Brooks & Sons, Inc. v. Norman's Country Market, Inc..*, 98 Bankr. 47 (Bankr. N.D. Fla. 1989); *In re United Fruit & Produce*, 86 Bankr. 14 (Bankr. D. Conn 1988). Anticipating this potential result and the likelihood that additional PACA trust creditors exist which are not yet parties to the litigation, the Frio Ice, court ruled that the trust account should contain <u>all</u> trusts assets, not just an amount sufficient to cover the claim of one PACA creditor, as the trust exists for the benefit of all unpaid suppliers, who would

then be entitled to their pro-rata share. *Frio Ice, supra*, at 159.

In *University of Texas vs. Camenisch*, 451 U.S. 390 (1981), the United States Supreme Court described the purpose of preliminary injunctive relief as follows:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.

*Id.* at 395. *See, also, Mississippi Power & Light Co. v. United States Pipe Line Gas Co.*, 760 F.2d 618 (5th Cir. 1985). In the case at bar, the *status quo* must be preserved until the Court can rule on the merits of the case.

Plaintiff has demonstrated through its Complaint and the testimony set forth in the supporting Certifications, that it is an unpaid supplier of perishable agricultural commodities to Global; Global has violated the PACA trust provisions, and, absent a temporary restraining order, the corpus of the PACA statutory trust will continue to be dissipated. No legal remedy will be sufficient to compensate plaintiff if the trust corpus has been entirely depleted. Therefore, plaintiff seeks a temporary restraining order without notice and then a preliminary injunction to preserve the *status quo* until such time as the Court can hear this case on the merits and grant effective relief.

### C. Plaintiff Meets the Traditional Requirements for Temporary Restraining Order and Preliminary Injunction

Plaintiff is entitled to a temporary restraining order and preliminary injunction under the traditional equitable formulations for determining whether injunctive relief is appropriate. Under traditional equity jurisprudence, the Court should consider and balance four factors in deciding whether to issue a temporary restraining order:

1. Whether the plaintiff is likely to succeed on the merits;

2. Whether the plaintiff will suffer irreparable injury if the relief is not granted;

3. Whether the injunction would harm the defendants; and

4. Whether the public interest would be served by issuing the temporary restraining order.

*In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985); *Canal Authority of Florida v. Callaway*, 489 F.2d 567,572 (5th Cir. 1974). The test is a flexible one and the factors are not prerequisites to be met, but rather are considerations that must be balanced. *In re DeLorean Motor Co.* The degree of likelihood of success on the merits that must be shown decreases as the strength of the showing of the other factors increases and a movant need only demonstrate a "sufficiently serious question" to justify further investigation, and not a strong likelihood of success on the merits. *In re DeLorean Motor Co.; see, also, Friendship Materials, Inc. v. Michigan, Inc.*, 679 F.2d 100 (6th Cir. 1982). A balancing of these four factors demonstrates that plaintiff is entitled to a temporary restraining order.

### 1. **Plaintiff will succeed on the merits**.

The facts and evidence before this Court demonstrate that there is a substantial likelihood that plaintiff will prevail on the merits of this case. Section 5 of the PACA, 7 U.S.C. §499c, creates a statutory trust for the benefit of unpaid sellers or suppliers of perishable agricultural commodities, the *corpus* of which consists of the perishable agricultural commodities received, all inventories of food or other products derived from the perishable agricultural commodities received, and any receivables or proceeds from the sale of such commodities or products. In this regard, Section 5(c), 7 U.S.C. §499e(c)(2), provides is pertinent part as follows:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission

>merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, <u>until full payment</u> of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents... (emphasis ours)

As an entity engaged in the buying of wholesale quantities of perishable agricultural commodities, Global was a "dealer" under the provisions of the PACA and the applicable regulations promulgated by the Secretary of Agriculture. 7 U.S.C. §499a(6) 7 C.F.R. §46.2(m)(l). The perishable agricultural commodities supplied by plaintiff to Global were acquired by Global in interstate commerce and fall within the statutory definition of a "perishable agricultural commodity." 7 U.S.C. §499a(4)(A). Therefore, the transactions between Plaintiff and Global which are relevant for the purposes of the Application are governed by the trust fund provisions of the PACA, 7 U.S.C. §499e(c).

Pursuant to the terms of the statute, the inventory of perishable agricultural commodities held by Global and the proceeds derived from the sale thereof are impressed with a statutory trust, and have been so subject to the statutory trust since delivery by plaintiff of perishable agricultural commodities. Under the regulations, the entitlement of plaintiff to participate in the statutory trust created by PACA was automatic upon the transfer of the perishable agricultural commodities to Global. 7 C.F.R. § 46.46(d)(l).

The Statutory trust is a nonsegregated "floating" trust pursuant to which the commingling of trust assets is contemplated, and all trust assets whether or not commingled are part of trust *corpus*. 7 C.F.R. § 46.46(c). Accordingly, it is not necessary for plaintiff to trace specific trust assets in the possession of Global. *In re Fresh Approach, Inc.*, 51 Bankr. 412 (Bankr. N.D. Tex 1985).

As the evidence before this Court demonstrates, plaintiff has done all that is necessary to

13

perfect its position as a PACA trust beneficiary, and as such is entitled to specifically enforce those rights against Global pursuant to 7 U.S.C. §499e(c)4.

### 2 Plaintiff is suffering irreparable injury which will continue unless the defendants are enjoined.

The purpose of a temporary restraining order is to prevent irreparable injury so as to preserve the Court's ability to render meaningful a decision on the merits. *United States v. Alabama*, 791 F.2d 1450 (11th Cir. 1986). Plaintiff is suffering, and has already suffered, irreparable injury as a direct result of Global's failure and inability to pay accounts due and maintain the statutory trust. If Global is permitted to further dissipate the trust assets, plaintiff will continue to sustain serious and irreparable harm.

The trust proceeds are necessary and indispensable to plaintiff's ongoing business. "Irreparable injury," for purposes of granting a temporary restraining order, is harm which cannot be reasonably redressed in a court of law; what is critical is immediacy of harm rather than its magnitude. *UST. Inc. v. United States*, 648 F. Supp. 1 (CIT 1986). Clearly, the harm at issue here is immediate if plaintiff's business begins to falter as a result of the inability to meet its obligations to its vendors and customers. This Court cannot restore the loss of long-standing business relationships with creditors, suppliers and customers, nor mend a damaged reputation in the marketplace.

In the absence of preliminary injunctive relief, certain of the PACA trust assets now held by Global and which will be forthcoming from collection of its accounts receivable and sale of its units in the Brooklyn Terminal Market, will likely be used by Global to satisfy other debts, or will be otherwise dissipated. If Global is not required to set aside the trust funds, and make an accounting to the Court regarding the current status of the business (accounts receivable, accounts payable,

operating expenses, etc.), the corpus of the trust will continue to be dissipated, in direct contravention of the PACA.

### 3. The relief sought by plaintiff does not impose an undue hardship on Global

By placing the funds in trust, Global would only be fulfilling its statutory duty as trustee. Requiring fulfillment of such a duty cannot be harmful as a matter of law.

Furthermore, if the Court grants the requested injunctive relief, Global will only be required to set aside trust funds in an interest-bearing account pending the outcome of the litigation. Global will <u>not</u> be required to pay the money to plaintiff. Hence, in the event this Court should decide that the PACA trust, or portions thereof, are invalid, Global will not have suffered any hardship by the granting of the temporary restraining order.

### 4. The relief sought by plaintiff benefits the public.

The public interest must always be considered in evaluating a motion for a temporary restraining order. *Glaxo, Inc. v. Heckler*, 623 F. Supp. 69 (D.N.C. 1985). Selective enforcement of the PACA trust provision would create a lingering doubt in the minds of produce suppliers and sellers everywhere while at the same time unjustifiably enriching those unscrupulous parties who do not perform as promised. The trust provisions of the PACA were specifically designed to ensure that suppliers, such as plaintiff, would be paid promptly. The PACA trust provision specifically declares that its intent is to protect the public interest and to remedy the burden on commerce caused by receivers, such as Global, who do no pay for produce they purchase, but, instead, use the proceeds for other purposes. 7 U.S.C. § 499e(c)(1).

Third parties with whom plaintiff has contractual commitments will be harmed if the trust

funds are dissipated. The Secretary of Agriculture has addressed the precise situation involved here in *In re Columbus Fruit Co.*, 40 Agric. Dec. 109, 114 (1981), *aff'd mem.*, 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982):

> Failure to pay violations not only adversely affect the party who is not paid for produce, <u>but such violations have a tendency to snowball. "On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee.</u>" This could have serious repercussions to producers, licensees and consumers. (emphasis added)

(quoting *In re John H. Norman & Sons Distrib. Co.*, 37 Agric. Dec. 705, 720 (1978)). Therefore, the public interest favors granting a temporary restraining order.

### D.     The Relief By Plaintiff Is Customarily Entered

Numerous Courts have routinely granted preliminary injunctive relief of the type sought by plaintiff. In a case brought by purported PACA trust beneficiaries, the Eleventh Circuit established the standard which must be met in order to obtain preliminary injunctive relief and, specifically, the relief which may be provided should that standard be met.

> Upon a showing that the trust is being dissipated or threatened with dissipation, <u>a district court should require the PACA debtor to escrow its proceeds from produce sales, identify its receivables, and inventory its assets. It should then require the PACA debtor to separate and maintain these produce-related assets</u> as the {PACA trust for the benefit of all unpaid sellers having a bona fide claim. 7 U.S.C.A. §499e(c)(3).*Frio Ice, supra*, at 159 (emphasis added).

Plaintiff has met this standard of proof and request precisely the relief identified by the Eleventh Circuit as appropriate under the circumstances.

Numerous federal district courts have issued restraining orders and preliminary injunctions requiring parties such as Global to set aside PACA trust funds pending final disposition of the case (see Exhibit **A** to Declaration of Paul T. Gentile for copy of decisions and orders).The evidence

before this Court definitively establishes that unless plaintiff receives similar immediate relief, the trust *res* will continue to be dissipated by Global.

## IV. CONCLUSION

Plaintiff is entitled to a temporary restraining order without notice in order to maintain the trust *res* and ensure that the *status quo* be maintained. Based upon the foregoing, the facts establish that defendants have dissipated, and will likely continue to dissipate the PACA trust assets belonging to plaintiff in violation of the defendants' statutory and regulatory duties to preserve those assets and pay $349,920.00 trust debt due and owing to plaintiff.

Those facts further establish that plaintiff has suffered irreparable harm, and is threatened with additional immediate and irreparable harm through further dissipation of its PACA trust assets, as a matter of law. Accordingly, plaintiff is entitled to both preliminary injunction and temporary restraints without notice to defendants pending a hearing on the preliminary injunction application. *Tanimura and Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F. 3d, 135 (3d Cir. 2000) applies with equal force here, and "giving defendant[s] notice before entry of a Temporary Restraining Order will allow defendants to further dissipate PACA trust assets." *Spectrum Produce Distributing, Inc. v. Fresh Marketing, Inc.*, 2011 U.S. Dist. LEXIS 126348 at 4 DNJ Nov. 12, 2011. *Procacci Bros. Sales Corp., supra,* 2003 U.S. Dist. LEXIS 19620 at \*\*3. Providing defendants with advance warning that injunctive relief may be entered could enable defendants to frustrate plaintiff's trust rights by selling or transferring PACA Trust assets, using such assets to liquidate the individual defendants' personal liability, and/or paying preferred non-trust creditors.

Notably, the injunctive relief sought by this application seeks only to enjoin the assets of the corporate defendant, Global. Although the individual defendant, Harvey Ehrlich, is jointly and

17

severally liable for the $349,920.00 trust debt, plaintiff does not seek to enjoin his personal assets at this time.

Moreover, following entry of a temporary restraining order, defendants will have the right to vacate such restraints immediately by paying plaintiff the trust monies due and owing. Defendants will also have the right to move the Court to dissolve or modify the restraints under Rule 65(b) and, in any event, a prompt hearing will be held on plaintiff's application for a preliminary injunction. In the interim, the temporary restraints will maintain and preserve the *status quo* by preventing any further dissipation of the PACA trust assets belonging to plaintiff.

Finally, no security or bond should be required under Rule 65(c) because defendants already possess $349,920.00 in PACA trust assets belonging to plaintiff. Those assets effectively serve as security for the issuance of a temporary restraining order.

Based upon the foregoing plaintiff respectfully urges this Court to grant its Motion for Temporary Restraining Order Without Notice and Preliminary Injunction and further Order defendant Global to place any and all trust funds, including all monies and receivables of Global and any net proceeds from the sale of its operating stalls in the Brooklyn Terminal Market, which are currently in the possession of Global and/or the individual defendant, Ehrlich into an interest-bearing escrow account held by plaintiff's attorney, so that the PACA statutory trust will be preserved during the pendency of this litigation.

Dated: January 13, 2014

Respectfully Submitted,

By: _____
Paul T. Gentile (PTG-4037)
Paul T. Gentile P.C.
Attorney for Plaintiff